Curia, per

Butler, J.
The question to be determined in this case is, whether the contract between the parties falls within the seventeenth section of the Statute of Frauds. There was no earnest money paid, nor part delivery. The thing contracted for being incapable, at the time, of delivery ; nor was there such a memorandum, in writing, as would have been sufficient to bind both parties. So that if the statute embraces the contract, its requisites have not been complied with. The contract, to be good at all, must be so independently of this section of the statute. It is difficult to reconcile the English decisions on the section of the statute referred to. In many instances, they turn on exceedingly refined and unsatisfactory distinctions. At one time, it was held that executory contracts, that is, such as contemplated the future delivery of goods, in solido at the time of the contract, were entirely without the reach of the statute. But since the decision of Lord Loughborough, in the case of Rondeau vs. Wyatt, 2 H. Blac. 63, the distinction between executory and executed contracts has been wholly disregarded. Such a distinction, where the thing contracted for was in existence at the time, was too narrow to satisfy the provisions of the statute. But in the case referred to, a distinction is taken between mere contracts of sale, and those contracts for the sale of goods where work and labor is previously to be bestowed upon *202 them, and materials and necessary things to be found. In such case, the contract blends subjects together, some of which are not in the contemplation of the statute. That opinion with the above distinction was reviewed with approbation in the case of Cooper vs. Elston, 7 T. R. 14. In both the cases the contracts were for the delivery of wheat, at a future period, which was capable of being delivered at the time. In the case of Groves vs. Buck, Lord Ellenborough decided the case before him on that distinction. Such seems to have been, until a very recent period, the uniform tenor of the English decisions ; and they have been followed, as far as I know, by all the American adjudications. In the case of Crookshank vs. Burrell, 18 J. R. 58, C. J. Spencer remarks that however refined the distinction may be, between goods in solido, and capable of delivery at a future day, and a contract to deliver some thing at a future day, not then existing, and yet to be made, it is well settled, and it is now too late to question it. The case of Sewall vs. Fitch, 8th Cow. 215, rvas this, “the contract was for the delivery of 300 casks of Thomas manufactory cut nails;” the nails were not then cut, but were to be made before they could be delivered. It was held that the statute requiring a memorandum, (fee. of goods sold, above the value of £10, means goods in so-lido, and that although it extends to contracts to be executed in futuro, as well as such as are capable of immediate execution, still it does not embrace goods yet to be manufactured, or such as require work and labor to complete them as articles of merchandize. This case seems to go quite far enough, and further than it is necessary to go in the case under consideration. I am inclined to think that the proposition should be limited, so as to embrace only such contracts as primarily contemplate work and labor to be done at the instance of the purchaser, and for his use and accommodation, so as to make the work and labor of the contracting vendor, or such as he may procure to be bestowed, at his expense, the essential consideration of the contract. In such cases, there is great reason in the distinction. For suppose such cases as these — that a painter contracts to deliver a certain number of paintings of a novel *203 description, such as has been designed and suggested by } the other party, and which, perhaps, would suit nobody i else. In pursuance of the understanding, materials are bought, time is lost and labor bestowed ; could the contracting party for such paintings, get oíf and be relieved, because the contract was for the sale and delivery of goods 1 Or it may be supposed that some other rare article is the subject of the contract, which has to be manufactured in a particular way, for the gratification of the contracting purchaser. Here the labor and trouble of the one > party have been bestowed at the instance of another. And / is it not reasonable, therefore, that they should form such ) a consideration as to entitle him to compensation 'l Certain ) loss has resulted to one, by the act and solicitation of ano- ) ther, and such as might not have occurred under a general l contract for the delivery of goods of a kind that are appear- 1 ing and disappearing in the daily transaction of business, j These considerations may suggest the justice of the distinc- v tion which/has been adverted to, whilst they may not vary its general character. I think the case under consideration will afford an apt illustration^ of what I have been saying. The sashes that the defendant wanted were such as the plaintiff could never have had an occasion to buy in his general business. He incurred expense and trouble entirely to accommodate the defendant; for unless the defendant and his brother officers had taken the sashes, it is hardly probable that others would have bought them in the general course of trade. At the time of the contract, the sashes had to be made; and to be made at a distance from plaintiff’s place of doing business. He undertook to perform an agency for the defendant, at his own expense, about that which would have been of no benefit to him, unless the terms of the contract were complied with. If the plaintiff! / had been a maker of such articles, and had made such I j sashes as these for the defendant, the contract would have i i been regarded as one for work and labor, as well as for \{ goods to be delivered; as much so, as if a tailor had made I a new fangled dress for a peculiar individual, and such ■ as would, perhaps, suit no one but the person speaking for it. V'
*204 The fact that the sashes were to be made in Germany, by the procurement of plaintiff, instead of being made by the plaintiff himself, can or ought to make no difference in the case. It was suggested in argument that the sashes being those of the national sashes of Germany, should have been regarded as goods to be imported, and not to be manufactured specially for the plaintiff. The Recorder, who tried the case, did not come to that conclusion ; and it is our duty to act on his view of the facts. Besides, it is not very usual that articles of military uniform are ordinary articles of merchandize. They are usually made for particular persons, and may be more or less costly, according to the taste of the officer wanting them.
There is another ground on which the decision below may stand, independently of that on which it rests. By the terms of the contract, I do not understand that plaintiff undertook absolutely to sell to the defendant the sashes, to be delivered in futuro^JVhe contract, as proved, was -that plaintiff was requested to order four sashes, (fec.\ The plaintiff undertook the agency, on the understanding that he was to be paid when he had procured the sashes under the order. If so, I do not think the case within the statute. It has been recently decided in England, “that an agreement by the master of a sloop, to convey corn, within a given time, from J to H, and having delivered it at H, to fetch from B, and deliver to the plaintiff, at J, a cargo of coals, at 29s. per chaldron, to be paid for on delivery, is not within the Statute of Frauds, and need not be in writing. The court thought there was no contract by the master to sell coals, but to procure and provide them for the plaintiff, at B, and afterwards to bring them to J; and that if the defendant had found it impossible to procure coals at B, no action would have lain against him, for a breach of contract to deliver coals.” 1 Bing. 399, as extracted by Chitty on Contracts. Now, reverse the situation of the parties in the ease under consideration, and how does the case standi? The plaintiff here did not undertake to sell to the defendant the articles, but undertook to order them from Germany. If he could not have procured them there, he would have been liable to no action for a *205 breach of contract. But when he did order them, and they were procured by his agency, was there not an implied contract that defendant should pay for them when they were ready for delivery ? Ex equo et bono, the right for compensation arises.
This decision of the English court has been made since an important amendment to the Statute of Frauds has been enacted by Parliament, which very much extends the provisions of that statute. The latter decisions, under the statute, as thus amended, must, therefore, be regarded as being very much controlled and modified by statutory regulation. By the statute 9th George 4th, ch. 14, S. 7, after a recital of what had been the tenor of judicial decisions on the statute of Charles, it is provided that the said enactments shall extend to all contracts for the sale of goods of the value of £10 sterling and upwards, notwithstanding the goods map be intended to be delivered at some future time, or may not at the time of such contract be actually made, procured or provided, or fit or ready for delivery, or some act may be requisite for making or completing thereof, or rendering the same fit for delivery.
This enactment presupposes the doctrine of the decisions, in conformity with which this judgment has been made, to have been the prevailing law on the subject, and, therefore, must be regarded as a recognition of their authority at the time. Up to the time of the Act, I regard all the English adjudications as consistent, after they had taken their new direction by the judgment of Lord Lough-borough. The case of Smith vs. Surman, 17 Eng. C. L. R. 443, was mainly relied on to shew that the English doctrine had undergone a change.
That case seems to be this — A. being the owner of trees growing on his land, verbally agreed with B, while they were standing, to sell him the timber, at so much per foot. B afterwards offered-to sell the buts of the trees to a third person, and said he would convert the tops into building stuff. A afterwards required B to pay for the timber which he bought of him. B wrote a letter in answer, saying he had bought the timber, but that he had bought it as-sound, and that it was not so. Held, first, that the con *206 tract was not a contract for the sale of lands, (fee. but that it was a contract for the sale of goods, wares, and merchandize, within the seventeenth section of the Statute of Frauds.
The great difficulty in the case, was whether the contract was one for the sale of lands; and when that was overcome by the court, it stood simply thus, that B had contracted for so much timber, in solido, by the foot. A had nothing more to do with it, by way of preparing it for delivery. What B was to do, was for his own advantage. The work and labor of A, formed no part of the contract, and, therefore, had nothing to do with the decision. If it had been incumbent on A, to fell and prepare this timber, then, according to our doctrine, he would have recovered. According to these views of the law, the decision below must be affirmed. Motion dismissed.
Richardson, O’Neall, Evans, Wardlaw and Frost, JJ. concurred.